No. 25-1922

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

STATE OF WASHINGTON, et al.,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, et al.,

*Defendants-Appellants*.

On Appeal from the U.S. District Court for the Western District of Washington
No. 2:25-cv-00244-LK
The Honorable Lauren King

## PLAINTIFFS-APPELLEES' SUPPLEMENTAL BRIEF REGARDING ARTICLE III STANDING AND RIPENESS

NICHOLAS W. BROWN
Attorney General of Washington

NOAH G. PURCELL, WSBA #43492
Solicitor General
WILLIAM MCGINTY, WSBA #41868
TERA HEINTZ, WSBA #54921
ANDREW R.W. HUGHES, WSBA #49515
CRISTINA SEPE, WSBA #53609
CYNTHIA ALEXANDER, WSBA #46019
NEAL LUNA, WSBA #34085
LUCY WOLF, WSBA #59028
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
Noah.Purcell@atg.wa.gov
*Attorneys for State of Washington*

[Additional Counsel on Signature Page]

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................1

II.  SUPPLEMENTAL STATEMENT ...................................................2

   A. After the President Issued the Challenged Executive Orders, Federal Agencies Immediately Enforced Them, Including Against Plaintiff States.........................................................................................2

   B. The Challenged Executive Orders Immediately Reduced the Availability of Gender-Affirming Care.......................................3

III. ARGUMENT ..............................................................................5

   A. Plaintiffs Have Article III Standing............................................5

   B. The Case Is Ripe....................................................................10

IV.  CONCLUSION ..........................................................................14

# TABLE OF AUTHORITIES

## Cases

*Biden v. Nebraska*,
  600 U.S. 477 (2023) ...................................................................9

*City & Cnty. of San Francisco v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) ............................................. 6, 8, 11, 12

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...................................................................6

*Colwell v. Dep't of Health & Human Servs.*,
  558 F.3d 1112 (9th Cir. 2009) ...............................................12

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) ...................................................................6

*Dobbs v. Jackson Women's Health Org.*,
  597 U.S. 215 (2022) ...................................................................10

*Eisenstadt v. Baird*,
  405 U.S. 438, 446 (1972) .........................................................11

*Freedom to Travel Campaign v. Newcomb*,
  82 F.3d 1431 (9th Cir. 1996) ...................................................13

*June Med. Servs. LLC v. Russo*,
  591 U.S. 299 (2020) ...................................................................10

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004) ...................................................................9

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555, 560 (1992) .........................................................11

*See Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*,
  122 F.4th 825 (9th Cir. 2024)...................................................13

*Singleton v. Wulff*,
    428 U.S. 106 (1976) ..........................................................................10

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) ..........................................................14

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) .............................................. 12, 13, 15

*Tingley v. Ferguson*,
    47 F.4th 1055 (9th Cir. 2022) ...........................................................16

*Twitter, Inc. v. Paxton*,
    56 F.4th 1170 (9th Cir. 2022) ...........................................................11

*Washington v. Trump*,
    847 F.3d 1151 (9th Cir. 2017) .........................................................6, 8

## Statutes

Colo. Rev. Stat. § 10-16-104(30)(b) .........................................................9

Minn. Stat. § 256B.0625 ...........................................................................9

Or. Rev. Stat. § 414.769...........................................................................9

Wash. Rev. Code § 7.09.675.....................................................................9

## Other Authorities

Exec. Order 14,168, 90 Fed. Reg. § 8615 (Jan. 20, 2025)...................2, 7

Exec. Order 14,187, 90 Fed. Reg. § 8771 (Jan. 28, 2025)........................2

## I.    INTRODUCTION

While this Court has an independent obligation to determine its jurisdiction, there is a good reason that Defendants chose not to argue standing or ripeness on appeal: the record unequivocally demonstrates both.

The Executive Orders challenged here immediately harmed Plaintiffs. Citing the Orders, multiple federal agencies notified Plaintiff State agencies that they would immediately lose existing grant funding. ER-15. By itself, this harm demonstrates standing and ripeness. But the harms went further. The Orders harm both Plaintiff State institutions and Physician Plaintiffs by forcing them to choose between providing necessary care and foregoing critical funding. ER-12-20. And the Physician Plaintiffs independently have standing to assert the rights of their patients, whom the Orders harm by denying medically necessary care. ER-20-21.

These harms are directly traceable to the Orders. Indeed, Defendants proudly proclaimed that the Orders were having their "intended effect" by causing "hospitals around the country" to cease providing care to transgender minors. ER-16. And the harms are redressable: when the district court enjoined portions of the Orders, Defendants rescinded their grant termination notices to hospitals and physicians in the Plaintiff States, which were then able to continue providing care. *E.g.*, 1-SER-115-119. In short, Plaintiffs have demonstrated standing and ripeness.

## II.    SUPPLEMENTAL STATEMENT

**A.    After the President Issued the Challenged Executive Orders, Federal Agencies Immediately Enforced Them, Including Against Plaintiff States**

On January 20, 2025, President Trump issued Executive Order 14,168, titled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government" (Gender-Ideology Order); 90 Fed. Reg. § 8615 (E.O. 14,168). And on January 28, 2025, President Trump issued Executive Order 14,187, titled "Protecting Children from Chemical and Surgical Mutilation" (Denial-of-Care Order); 90 Fed. Reg. § 8771 (E.O. 14,187). These executive orders prohibit federal agencies from funding institutions that promote "gender ideology" or provide gender-affirming care. E.O. 14,168 §§ 3 (e), (g); E.O. 14,187 § 4.

Shortly thereafter, multiple federal agencies issued notices to the Plaintiff States purporting to implement the Orders by restricting grants previously issued to their institutions. 6-SER-1467 (restricting a Health Resources & Services Administration award issued to the University of Washington misaligned with, inter alia, the Gender-Ideology and Denial-of-Care Orders); 2-SER-453 (same for Centers for Disease Control and Prevention grant issued to the University of Washington); 3-SER-747 (every recipient of Health Resources & Services Administration funding receiving the same message). These notices commanded that "[a]ny vestige, remnant, or re-named piece of any" programs that violated the executive orders were "terminated." 6-SER-1467; 2-SER-453 ("Any vestige, remnant, or re-named piece of

2

any gender ideology programs funded by the U.S. government under this award are immediately, completely, and permanently terminated."). While Defendants initially represented in this case that "no agency defendant has revoked or withheld any particular grants as a result of the EOs," they later backtracked and corrected that misrepresentation in a notice filed on April 21, 2025. ER-3-4. In fact, at least 17 grants were terminated in reliance on the Gender Ideology Order, including to the Plaintiff States. *Id.*; 2-SER-432-34 (grant to Washington State Department of Health terminated in reliance on Gender Ideology Order).

After Plaintiffs filed suit, Defendants rescinded their initial actions to enforce the Orders, either without explanation or due to court orders. *See, e.g.*, 2-SER-455, 6-SER-1470. Nonetheless, federal agencies continued to terminate funding to institutions providing gender-affirming care in the Plaintiff States due to the provision of that care, even after the temporary restraining order and preliminary injunction were issued by the district court, and only reinstated them when Plaintiffs threatened to bring a motion to enforce the district court's orders. 1-SER-135-36 (notice of grant termination of a study regarding gender-affirming care due to study of "gender identity"); 1-SER-115-19 (correspondence between counsel).

## B. The Challenged Executive Orders Immediately Reduced the Availability of Gender-Affirming Care

The Orders' potent threats of defunding have forced state-affiliated providers to halt gender-affirming care. 5-SER-1421-49. In fact, the White House took credit

3

for major hospitals and health systems ceasing the provision of gender-affirming care, including in Colorado, immediately after the Orders were issued. 5-SER-1428-29; 3-SER-577-606. After Colorado joined this lawsuit and the district court issued the preliminary injunction, those same Colorado hospitals resumed providing gender-affirming care. 1-SER-154-58.

The district court's orders were instrumental in allowing gender-affirming care providers in the Plaintiff States to keep their doors open. *E.g.*, 1-SER-13 (preliminary injunction removes the "risk [of] losing federal grant funding that supports our core mission of research and education" at Children's Minnesota); 1-SER-18-20 ("If the preliminary injunction is not continued, Children's Hospital [Colorado] is less likely to be able to provide gender affirming care."); 1-SER-23 ("[I]f the preliminary injunction is stayed, [Seattle Children's] will face the loss of some or all of our federal research and/or our CHGME and other educational funding because we provide gender-affirming care."); 1-SER-26 (the district court's "Preliminary Injunction Order . . . [has] provided significant relief to UW School of Medicine."); 3-SER-747 ("The Executive Order places [Oregan Health and Science University] in an impossible position of putting hundreds of millions of dollars of research funds at risk or agreeing to stop providing critical, life-saving care to an underserved and marginalized population.").

The district court's orders also allowed the Physician Plaintiffs to keep providing gender-affirming care and their patients to continue accessing it. 2-SER-500 ("As long as my institution continues to receive protection from this Court, I believe I will be able to continue providing equal medical care to all of my patients."); 2-SER-504 ("a Court order that protects providers and patients for a longer period of time would have important stabilizing effects"); 2-SER-508 ("the outcome of this lawsuit is probably the difference-maker in whether my institution, and other institutions like mine in other states, can continue to offer gender-affirming care").

## III.   ARGUMENT

### A.   Plaintiffs Have Article III Standing

The district court made detailed factual findings to conclude Plaintiffs had standing, ER-12-21, which Defendants have not disputed. The district court's standing conclusion was correct.

To establish standing, Plaintiffs must show they have suffered or will suffer an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation omitted). On a preliminary injunction, plaintiffs "may rely on the allegations in their Complaint and whatever

other evidence they submitted" to establish standing. *See Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017) (per curiam).

Here, the most obvious basis for standing is that Plaintiff States stand to lose hundreds of millions of dollars in federal funding if the Orders go into effect. *See Dep't of Com. v. New York*, 588 U.S. 752, 767 (2019) ("[L]os[ing] out on federal funds . . . is a sufficiently concrete and imminent injury to satisfy Article III."); *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1235-36 (9th Cir. 2018) (counties had standing to bring separation of powers claim against an executive order based on threatened loss of federal funds). The Denial-of-Care Order expressly and "immediately" conditions federal research and education grants to medical institutions, including medical schools and hospitals, on denying gender-affirming care to individuals under age 19. E.O. 14,187 §§ 2, 4. And the Gender Ideology Order forbids federal agencies from funding institutions that promote "gender ideology," which gender-affirming care undoubtedly does under the terms of the order. E.O. 14,168 §§ 3(e), 3(g). Any enforcement of these orders harms the Plaintiff States. As the district court found, each of the Plaintiff States provide the services that the challenged orders target. ER-14 (finding that Plaintiffs provide the services prohibited by the challenged orders). And "[t]he record shows that enforcement of [the challenged orders] will cause one of two concrete harms to Plaintiffs: they will either (1) be forced to halt any treatment or funding for gender dysphoria or (2) lose

6

federal funding." ER-17. Indeed, immediately after the orders were issued, federal agencies implemented them to withhold and condition federal funding to the Plaintiff States. ER-3-4, 2-SER-432, 453, 3-SER-747, 6-SER-1467.

Plaintiff States' medical institutions will be especially hard hit if the Orders go into effect. For example, UW Medicine provides gender-affirming care and its school of medicine receives nearly $500 million in federal grant funding each year. 6-SER-1460. State instrumentalities in Oregon, Minnesota, and Colorado are similarly affected. ER-14 n. 7, ER-83-86. The threatened loss of grant funding not only jeopardizes schools' budgets but also undermines the teaching and research missions of the universities, and the work of Physician Plaintiffs, all of whom endeavor to provide—and improve—the highest quality care, including gender-affirming care where appropriate. *E.g.*, 6-SER-1463 (UW Medicine "provide[s] patient-centered and inclusive care, which includes gender-affirming care to treat gender dysphoria."), 6-SER-1486 (Physician Plaintiff 2 has "conducted research on the health of transgender youth, including serving as the primary investigator on grant-funded research"), 6-SER-1505 ("In addition to being a clinician, I am a researcher."). The Order places public medical institutions in an impossible bind: to provide "lawful healthcare services, consistent with the standards of care, to underserved populations," or "risk losing hundreds of millions of dollars in federal research grants." 6-SER-1463-64; *see also* 1-SER-13, 1-SER-18, 3-SER-747, 3-

7

SER-804-05, 3-SER-868. *See, e.g.*, *City & Cnty. of San Francisco*, 897 F.3d at 1236 (plaintiffs showed standing by demonstrating that Executive Orders forced them to choose between foregoing federal funding or changing important policies).

Plaintiff States also have standing to vindicate their proprietary interests in the delivery of high-quality medical care. *See Washington*, 847 F.3d at 1159-61 (states have standing where challenged law harmed proprietary work of public universities). The Orders restrict state providers from delivering appropriate and necessary care under threat of federal defunding, forcing them to choose between hundreds of millions in research funding and the provision of necessary medical care—and limiting the treatment options available to state providers' patients. ER-83-86, 6-SER-1484, 6-SER-1490-91, 6-SER-1505. It similarly harms the Plaintiff States' Medicaid programs by shrinking the pool of providers available to provide care and making it more difficult for State Medicaid agencies to deliver critical care that is a part of their Medicaid plans. 3-SER-699, 3-SER-820, 4-SER-899.[1] The Orders thus harm the Plaintiff States' Medicaid agencies in "the performance of [their] public function," and the Plaintiff States have Article III standing to challenge them. *See Biden v. Nebraska*, 600 U.S. 477, 494 (2023).

---

[1] Each Plaintiff State requires that health insurance in the state, including Medicaid, cover gender-affirming care, including to adolescents. Wash. Rev. Code § 7.09.675; Or. Rev. Stat. § 414.769; Minn. Stat. § 256B.0625; Colo. Rev. Stat. § 10-16-104(30)(b).

Physician Plaintiffs also have third-party standing to assert the rights of their minor patients and their parents. A litigant may assert the rights of another by demonstrating, in addition to their own injury, a close relationship with the person whose rights are asserted and a "hindrance" to that person's ability to protect their own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). As the district court found, Physician Plaintiffs have this "close and personal relationship with their patients experiencing gender dysphoria," developed "over months and years of treatment." ER-21; *see also* 6-SER-1476-79, 6-SER-1490-91, 6-SER-1501-03. And Physician Plaintiffs' minor patients and their parents are hindered from protecting their own interests because they lack capacity or financial resources to sue and credibly fear retaliation from the federal government. *E.g.*, 6-SER-1503.[2] For standing, Physician Plaintiffs may rely on their own injuries as well as injuries to their patients, whose ability to obtain gender-affirming care is materially impacted by the challenged Orders. *See June Med. Servs. LLC v. Russo*, 591 U.S. 299, 318 (2020), abrogated on other grounds by *Dobbs v. Jackson Women's Health Org.*, 597

---

[2] Parents also reasonably fear that the federal government may be "trying to obtain their child[rens'] medical records in an effort to identify adolescents who have accessed this care." 6-SER-1503. Their fears are founded. *See, e.g., In re Subpoena Duces Tecum No. 25-1431-016*, 2025 WL 3562151 at *2 (W.D. Wash. Sept. 3, 2025) (quashing Department of Justice subpoena to Seattle Children's Hospital seeking "[d]ocuments sufficient to identify every patient prescribed puberty blockers or hormone therapy (by name, date of birth, SSN number, address and parent/guardian information)").

U.S. 215 (2022); *see also Singleton v. Wulff*, 428 U.S. 106, 114-16 (1976); *Eisenstadt v. Baird*, 405 U.S. 438, 446 (1972).

The Plaintiffs also meet the traceability requirement for standing: the injuries described above result from the challenged Orders. Indeed, Defendants have bragged that the Orders are having the exact effects described above by coercing hospitals and physicians into curtailing provision of gender affirming care. ER 16. And these injuries are redressable because injunctive and declaratory relief will prevent—and indeed, has prevented—Defendants from enforcing the Orders. ER 14-16; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *City & Cnty. of San Francisco*, 897 F.3d at 1236.

**B.    The Case Is Ripe**

The district court rejected Defendants' ripeness argument, ER-20 n.10, which Defendants declined to appeal. Rightly so.

The ripeness doctrine has both constitutional and prudential components. "The constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022) (quotation omitted). For the reasons described above, this test is more than met here: the challenged Orders have actually been enforced against state medical institutions, would force Plaintiffs right now (if they were not enjoined) to make impossible decisions about whether to forego funding or provide substandard

10

medical care, and are materially impacting the ability of Physician Plaintiffs' patients to access medical treatment. *See supra* § III.A; *see also Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009) (finding challenge to policy guidance ripe where enforcement had never moved beyond a voluntary compliance stage); *City & Cnty. of San Francisco*, 897 F.3d at 1238 (challenge to executive order ripe "given the severe potential for harm and the likelihood of prosecution").

This case is likewise prudentially ripe. Under the doctrine of prudential ripeness, the Court considers "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000) (en banc). As the district court found, prudential ripeness considerations strongly favor Plaintiffs. ER-20 n.10. Regarding fitness, Plaintiffs' claims are primarily legal and therefore "more likely to be ripe." *See Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1434 (9th Cir. 1996). Plaintiffs argue that the President lacks constitutional authority to condition receipt of federal funding on a recipient's cessation of gender-affirming care under separation of powers principles and the Fifth Amendment. *See generally*

11

Answering Br. These claims are "primarily legal." *See Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825, 840 (9th Cir. 2024).

Moreover, Plaintiffs have developed a significant factual record, meaning this case does not rest on "hypothetical situations." *See Thomas*, 220 F.3d at 1141-42 (holding case was prudentially unripe where the record consisted "only of a few conclusory affidavits"). "Plaintiffs submitted voluminous evidence" regarding, among other things, the concrete ways that the challenged Orders affected them. ER-8; *see also, e.g.*, 6-SER-1458-1507. That evidence shows that the Orders have direct and immediate effects: by subjecting the Plaintiff States' medical institutions and providers to severe financial threats, the Orders have the status of law which "requires immediate compliance with [their] terms." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009).

Regarding hardship, the challenged Orders "require[] an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Id*. Indeed, the White House itself has touted that the Denial-of-Care Order was "already having its intended effect," highlighting hospitals that have been coerced into curtailing or eliminating gender-affirming care in February of 2025. 3-SER-577-606, 5-SER-1428-29. And enjoining the challenged orders permitted affected providers in the Plaintiff States, including instrumentalities of the Plaintiff States, to continue providing the targeted medical care. 1-SER-13,

1-SER-18, 1-SER-23, 1-SER-26, 3-SER-747. In short, absent an injunction, the Orders would be in effect and causing immediate harm to Plaintiffs and the Physician Plaintiffs' patients. *See also PFLAG, Inc. v. Trump*, 766 F. Supp. 3d 535, 552 (D. Md. 2025) (legal challenge to Executive Orders ripe given the "tangible steps taken by at least two agencies to comply with the Executive Orders" and "the Administration's unequivocal statements outside of the context of this litigation").

Below, Defendants disputed ripeness by arguing that "no agency defendant has revoked or withheld any particular grants as a result of the EOs." ER-3, ER-15. But Defendants were forced to withdraw that misrepresentation after realizing that such revocations and withholdings *had* occurred (which is perhaps the reason Defendants did not dispute standing or ripeness in this appeal). ER-3-4. This should settle any doubt that the matter is ripe. *See Thomas*, 220 F.3d at 1142 (holding case unripe without "any real or imminent threat of enforcement").

But even if we pretend the Orders had never been implemented, withholding judicial resolution would still subject Plaintiffs to substantial hardship. By itself, the threat of having to forego hundreds of millions of dollars for critical medical research forces Plaintiffs' medical institutions into the "Sophie's choice" recognized by the district court of either providing necessary medical care and foregoing substantial federal research funding, or abandoning transgender adolescents to protect those critical funding streams. *See* ER-18. This coercive pressure is not speculative: many

13

providers of gender-affirming care, including in the Plaintiff States, have buckled underneath it. 5-SER-1428-29, 3-SER-577-606. And if there were any doubt left, the injunctions entered by the district court enabled providers of gender-affirming care to keep providing it and even enabled providers in Colorado to reinstate gender-affirming care after they announced they would stop in response to the Orders challenged here. *See supra* 3-4. This is more than enough to establish prudential ripeness. *Tingley v. Ferguson*, 47 F.4th 1055, 1071 (9th Cir. 2022) (holding case prudentially ripe where health care provider had to choose between providing care and risking penalties).

## IV.   CONCLUSION

This Court has jurisdiction and should affirm the district court's preliminary injunction.

RESPECTFULLY SUBMITTED this 13th day of February 2026.

<div style="margin-left:40%;">

NICHOLAS W. BROWN
Attorney General of Washington

*/s/ Noah G. Purcell*
NOAH G. PURCELL, WSBA #43492
Solicitor General
WILLIAM MCGINTY, WSBA #41868
TERA HEINTZ, WSBA #54921
ANDREW R.W. HUGHES, WSBA #49515
CRISTINA SEPE, WSBA #53609
CYNTHIA ALEXANDER, WSBA #46019
NEAL LUNA, WSBA #34085
LUCY WOLF, WSBA #59028
Assistant Attorneys General

</div>

800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
Noah.Purcell@atg.wa.gov
William.McGinty@atg.wa.gov
Tera.Heintz@atg.wa.gov
Andrew.Hughes@atg.wa.gov
Cristina.Sepe@atg.wa.gov
Cynthia.Alexander@atg.wa.gov
Neal.Luna@atg.wa.gov
Lucy.Wolf@atg.wa.gov
*Attorneys for State of Washington*

LAURYN K. FRAAS, WSBA #53238
Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
Lauryn.Fraas@atg.wa.gov
*Attorneys for Physician Plaintiffs 1-3*


KEITH ELLISON
Attorney General of Minnesota

JAMES W. CANADAY
Deputy Attorney General
445 Minnesota St., Ste. 600
St. Paul, Minnesota 55101-2130
651-757-1421
james.canaday@ag.state.mn.us
*Attorneys for State of Minnesota*


DAN RAYFIELD
Attorney General of Oregon

LAUREN PATTERSON ROBERTSON
Senior Assistant Attorney General
1162 Court Street NE

15

Salem, OR 97301-4096
503-947-4700
lauren.robertson@doj.oregon.gov
*Attorneys for State of Oregon*


PHIL WEISER
Attorney General of Colorado

SHANNON STEVENSON
Solicitor General
1300 Broadway, #10
Denver, CO 80203
720-508-6000
shannon.stevenson@coag.gov
*Attorneys for State of Colorado*

16

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 25-1922

I am the attorney or self-represented party.

**This brief contains** | 3,000 | **words,** including | 0 | words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◉ complies with the length limit designated by court order dated | Feb. 6, 2026 |.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Noah G. Purcell | **Date** | Feb. 13, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**        *Rev. 12/01/22*